# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-1973V**
UNPUBLISHED

|  |  |
|---|---|
| PERCY GLANVILLE, | Chief Special Master Corcoran |
| Petitioner, | Filed: February 2, 2022 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Site of Vaccination Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Ronalda Elnetta Kosh, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On December 30, 2019, Percy Glanville filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on December 6, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner has preponderantly established that the vaccine she received on December 6, 2017, was administered into her right arm.

## I.      Relevant Procedural History

On June 22, 2021, about 17 months after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner was not entitled to compensation because "the contemporaneous vaccine administration record clearly reflects that Petitioner's December 6, 2017 flu vaccine was administered into Petitioner's left deltoid, not her right shoulder as alleged." Rule 4(c) Report (ECF No. 35) at 10.

On August 31, 2021, a Status Conference was held, after which the parties were ordered to file any additional evidence on the issue of site of vaccination, as well as briefs addressing their arguments. ECF No. 37. Petitioner filed her brief on September 30, 2021. ECF No. 40. Respondent filed his response on November 1, 2021. ECF No. 41. The issue of site of vaccination is now ripe for a fact ruling.

## II.     Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right or left arm, as it relates to whether Petitioner can make the required showing that pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(iii).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8; *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Finding of Fact

Based on a review of the entire record, including the medical records and affidavits, the arguments in Respondent's Rule 4(c) Report, and the arguments in the parties'

respective briefs, I find that Petitioner's December 6, 2017 flu vaccine was likely administered in her right arm, as she contends. The following points are particularly relevant to that finding:

- Petitioner's pre-vaccination medical records reveal no injuries, inflammation, or dysfunction in Petitioner's right shoulder (although notably, at the time of her vaccination, Petitioner was receiving treatment for left shoulder pain). Ex. 3 at 9. On the date of her vaccination, December 6, 2017, Petitioner visited her orthopedist who ordered an MRI of her left shoulder to guide further treatment. *Id*.

- Petitioner received an influenza vaccine on December 6, 2017, at a Rite Aid Pharmacy near her home in New York. Ex. 20 at 3.

- The computer-generated vaccine administration record indicates that the vaccine was administered to Petitioner's left upper arm. Ex. 1 at 5.

- Rite Aid's Screening Questionnaire and Consent Form, which was filled out by Petitioner on the day of her vaccine, was also filled out and signed by the pharmacist that administered the vaccine. Ex. 20 at 2-3. The pharmacist circled both "LA" and "RA," indicating both left and right arms, but also crossed out "LA," leaving "RA" circled. *Id*. at 3.

- Petitioner filed an affidavit on January 23, 2020. Ex. 16. She recalled that the pharmacist that administered her vaccine asked whether she was right-handed or left-handed, and recommended that she receive the vaccine in her non-dominant left arm. *Id*. at ¶3. She explained that immediately prior to the injection, she recalled that she had an MRI scheduled for her left shoulder and asked to switch the injection to her right arm. *Id.* Then, the pharmacist administered the shot to her right arm. *Id.*

- Petitioner saw her primary care physician ("PCP"), Dr. Kristen Frank Dixon, the day after her vaccination, on December 7, 2017, complaining of pain in her right deltoid that began the day before after her flu vaccination. Ex. 5 at 55. The record notes "soreness after flu shot yesterday. Prior to that had no pain in the right shoulder." *Id*.

- On December 15, 2017, Petitioner called her orthopedist, Dr. Eugene Byrne, who was treating her for her left shoulder pain. Ex. 3 at 28. Petitioner reported that she "had a flu shot in right arm on 12/6 and can't move her

arm since and can't lay down." Petitioner was advised to see her PCP if her pain continued. *Id.*

- On December 19, 2017, Petitioner returned to Dr. Frank Dixon for a follow up on her right shoulder pain. Ex. 5 at 53. At that visit, Dr. Frank Dixon noted that she had seen, at the prior December 7, 2017 visit, a small scab from the injection site on Petitioner's right shoulder, "which was just over the glenohumeral joint." *Id*. Dr. Frank Dixon further noted that "the timeline of her symptoms correlates with influenza vaccine" and ordered xrays and an MRI of Petitioner's right shoulder. *Id.*

- On January 2, 2018, Petitioner saw orthopedic physician's assistant, Andrew Friebel, for "right shoulder pain that has occurred since 12/06/2017." Ex. 3 at 8. PA Friebel recorded that Petitioner "went to get a flu vaccine" on that date. *Id.* Petitioner was diagnosed with impingement syndrome of the right shoulder and a cortisone injection was administered. *Id.*

- On January 29, 2018, Petitioner presented to Dr. Byrne for continued treatment for her right shoulder pain. Ex. 3 at 7. Dr. Byrne noted that Petitioner "got a flare up [sic] shot at a local pharmacy and since that point she has had a significant pain in that right shoulder which is causing her significant difficulty." *Id.*  Dr. Byrne's impression was "right shoulder pain and beginnings of adhesive capsulitis," and administered an injection. *Id.*

- Petitioner saw Dr. Byrne on April 18, 2018, to review her right shoulder MRI results. Ex. 3 at 3. Dr. Byrne noted that "her right shoulder became painful after a flu shot" and diagnosed a "right shoulder partial thickness rotator cuff tear with pain that occurred after flu shot." *Id.*

- On April 19, 2018, Petitioner had an initial physical therapy evaluation for her bilateral shoulder pain. Ex. 5 at 42. Petitioner reported that "the right shoulder pain started when she got her flu shot in December." *Id.*

- Petitioner continued to attribute her right shoulder pain to her flu shot in December 2017 throughout her remaining treatment, including her post-surgical physical therapy. Ex. 9 at 127. At her initial evaluation on September 25, 2019, Petitioner reported that her "original injury started in December of 2017 when she had an injection for the flu in her right shoulder." *Id.*

The entirety of the record preponderantly supports the conclusion that Petitioner more likely than not received the December 6, 2017 flu vaccine in her right arm. Only one record - the computer-generated print-out from Rite Aid (Ex. 1 at 5) - definitively states that Petitioner received the flu vaccination in her left arm. The remaining records are consistent in identifying the vaccinated arm as the right. And one record rebuts the computer-generated record: the handwritten vaccination consent form, where the pharmacist who administered the vaccine crossed out the circled "LA" (left-arm) and left the circled "RA" (right-arm") untouched. Ex. 20 at 3.

In addition, Petitioner provided affidavit testimony explaining that, at the last minute, she requested that the vaccination be administered to her right arm because she remembered that she had an MRI of her left shoulder scheduled in the near future. Ex. 16 at ¶3. Petitioner's affidavit testimony provides a credible explanation for why the pharmacist crossed out the circled "LA" and left the circled "RA" intact, and thus illuminates how that record should be construed. The Federal Circuit has held that it is appropriate to credit the lay testimony of a petitioner when said testimony does not conflict with the medical records. *See Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021) (affirming special master's finding of severity based on petitioner's testimony in the absence of contemporaneous medical records).

Respondent argues that "the contemporaneous vaccine administration records document that Petitioner received the vaccine in her left shoulder and that later records alleging that the flu shot was administered to the right shoulder are based on "Petitioner's statements alone." ECF No. 41 at 5. However, in addition to Plaintiff's affidavit testimony *and* the handwritten form already discussed, her PCP, Dr. Kristen Frank Dixon, recalled and recorded in the medical record of Petitioner's December 19, 2017 visit that she had seen a scab on Petitioner's right shoulder "just over the glenohumeral joint" at Petitioner's previous visit on December 7, 2017, the day after her vaccination. Ex. 5 at 53. Dr. Frank Dixon's record is a contemporaneous record documenting evidence that the injection was given in Petitioner's right shoulder and should be given significant weight.

Finally, Petitioner's pre-vaccination medical records show she had no history of pain or dysfunction in her right shoulder. She suffered from right shoulder pain immediately after vaccination and sought treatment the very next day, attributing her pain to a flu shot administered to her right shoulder. Ex 5 at 55. There is no indication in the records of any other possible cause of Petitioner's right shoulder pain.

Overall, Petitioner's own assertions are sufficiently corroborated by the medical record to accept her contention of vaccine situs. At worst, the conflicting medical records make this a "close-call," but in such cases Program case law counsels deciding the matter

in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). Accordingly, I find there is preponderant evidence to establish that the flu vaccination alleged as causal in this case was administered to Petitioner in the right deltoid on December 6, 2017.

## V.    Scheduling Order

**Respondent shall file, by <u>Thursday, March 3, 2022</u>, a status report indicating how he intends to proceed in light of this fact ruling.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master